IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

```
F I L E D
SEP 2 9 2016
CLERK, U.S. DISTRICT COURT
RICHMOND, VA
```

CHRISTOPHER EARL COTTRELL,    )
                              )
        Petitioner,           )
                              )
v.                            )          Civil Action No.  3:16cv200–HEH
                              )
HAROLD W. CLARKE,             )
                              )
        Respondent.           )

## MEMORANDUM OPINION
### (Granting Respondent's Motion to Dismiss)

Christopher Earl Cottrell, a Virginia inmate proceeding *pro se* and *in forma*

*pauperis,* filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254

Petition," ECF No. 1) challenging his convictions of two counts of assault and battery on

a corrections officer.  In his § 2254 Petition, Cottrell argues entitlement to relief upon the

following grounds:[1]

| | |
|---|---|
| Claim One: | "Lack of subject matter jurisdiction; conspiring to obtain illegal convictions.  Knowingly and willfully." (*Id.* at 6.) |
| Claim Two: | "Conspiracy to deny jury instruction; omitting failure to prove 'beyond a reasonable doubt' the sworn oaths of plaintiffs." (*Id.* at 8.) |
| Claim Three: | "Ineffective assistance of counsel–denying fair and separate trials as justice required." (*Id.* at 9.) |
| Claim Four: | "Ineffective assistance in failing to object to a known lack of subject matter jurisdiction by the court." (*Id.* at 11.) |

---

[1] The Court corrects the spelling, capitalization, and punctuation in the quotes from Cottrell's
submissions.

| Claim Five: | "Ineffective assistance in failing to object to deliberate[ly] omitted jury instruction." (*Id.* at 19.) |
| Claim Six: | "Ineffective assistance in failing to object to prosecutor's duty to prove all elements of offense." (*Id.* at 20.) |
| Claim Seven: | "Ineffective assistance in failing to object to insufficiency of evidence to convict." (*Id.*) |
| Claim Eight: | "Ineffective assistance being denied of fair and meaningful appellate rights." (*Id.* at 21.) |

Respondent moves to dismiss the § 2254 Petition. Cottrell has responded. The matter is ripe for disposition. For the reasons stated below, the Court will grant Respondent's Motion to Dismiss and will deny Cottrell's § 2254 Petition.

## I.   PROCEDURAL HISTORY

A jury in the Circuit Court for the County of Sussex, Virginia ("Circuit Court") convicted Cottrell of two counts of assault and battery of a correctional officer, and fixed his sentence at a term of five years of incarceration. (ECF No. 19–1, at 3.) On May 6, 2013, the Circuit Court entered final judgment and sentenced Cottrell to five years. (*Id.*)

Counsel filed a petition for appeal raising three claims of trial court error. (ECF No. 19–2, at 2.) The Court of Appeals of Virginia awarded Cottrell an appeal on two claims, and denied his petition for appeal with respect to the third claim. (ECF No. 19–3, at 1–2.) Subsequently, the Court of Appeals of Virginia affirmed Cottrell's convictions. (ECF No. 19–4, at 9.) The Supreme Court of Virginia dismissed in part, and refused in part, the petition for appeal. (ECF No. 19–5, at 1.)

Cottrell filed his first petition for a writ of habeas corpus in the Supreme Court of Virginia, but ultimately moved to withdraw the action after Respondent filed a motion to

2

dismiss. (ECF No. 19–6, at 1; *see* Br. Supp. Mot. Dismiss ¶ 5, ECF No. 19.) On the same day, August 17, 2015, Cottrell filed a second petition for a writ of habeas corpus. (*See* ECF No. 19–6, at 1.) On August 20, 2015, the Supreme Court of Virginia acknowledged that Cottrell filed the second petition for a writ of habeas corpus and granted the motion to withdraw the first petition for writ of habeas corpus. (*Id.*) In his second petition for a writ of habeas corpus, Cottrell raised the following vague claims:

1. Ineffective assistance of counsel.

2. Prosecutorial Misconduct.

3. Judicial Misconduct.

4. Lack of subject matter jurisdiction to convict.

5. Denied of jury instruction charging proof beyond a reasonable doubt of sworn oaths of correctional officers.

(ECF No. 19–7, at 4–5 (as paginated by CM/ECF).) None of the attachments to Cottrell's habeas petition provided any further argument in support of his claims. *See* Petition for Writ of Habeas Corpus, *Cottrell v. Barksdale*, No. 151263 (Va. filed Aug. 17, 2015).

On December 8, 2015, the Supreme Court of Virginia dismissed Cottrell's habeas petition finding that "petitioner's claims assert conclusions or opinions without providing factual support and, therefore, do not support the issuance of a writ of habeas corpus. *Penn v. Smyth*, 188 Va. 367, 370–71, 49 S.E.2d 600, 601 (1948)." (ECF No. 19–8, at 1.) On February 29, 2016, the Supreme Court of Virginia denied Cottrell's petition for rehearing. (ECF No. 19–9, at 1.)

3

On April 5, 2016, the Court received Cottrell's § 2254 Petition that raises the greatly expanded claims for relief as set forth above.

## II.    EXHAUSTION AND PREOCEDURAL DEFAULT

Respondent argues that:

> To the extent Cottrell's current claims were presented to the Supreme Court of Virginia in his bare-bones habeas petition, the claims are exhausted for purposes of federal habeas review.
>
> To the extent Cottrell has expanded on the bare-bones claims he raised in his state habeas petition in the Supreme Court of Virginia, his claims are not exhausted for the purposes of federal habeas review, as the legal theories and factual allegations Cottrell now presents differ from those he advance[d] in the Supreme Court of Virginia. His claims should be deemed simultaneously procedurally defaulted and exhausted because Cottrell failed to present these claims to the Supreme Court of Virginia.

(Br. Supp. Mot. Dismiss ¶¶ 13–14.) The Court declines to find Cottrell's claims barred from review here on the basis of procedural default. While Claims Three through Eight are defaulted because Cottrell failed to raise them before the Supreme Court of Virginia, in light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Court addresses the merits of these claims. *See id.* at 1321 (Scalia, J., dissenting) (observing that as "a consequence of today's decision the States will *always* be forced to litigate in federal habeas, for *all* defaulted ineffective-assistance-of-trial-counsel claims (and who knows what other claims) . . . the validity of the defaulted claim (where collateral-review counsel was not appointed)"). The Court also believes that Claims One and Two are defaulted, however, these claims are readily dismissed because they lack merit.

### III. THE APPLICABLE CONSTRAINTS UPON HABEAS REVIEW FOR CLAIMS ONE AND TWO

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court emphasizes that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Cottrell raised Claims One and Two on direct appeal. Thus, the Court's review of those claims is constrained by the above.

## IV.    SUFFICIENCY OF THE EVIDENCE CLAIMS

A federal habeas petition warrants relief on a challenge to the sufficiency of the

evidence only if "no rational trier of fact could have found proof of guilt beyond a

reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question

in conducting such a review is whether, "after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v.

Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency

of the evidence to support a criminal conviction is "whether the record evidence could

reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

The majority of Cottrell's repetitive claims, although brought under the guise of

lack of jurisdiction or conspiracy or ineffective assistance of counsel, stem from

Cottrell's insistence that the warden and the officer that he assaulted and battered failed

to qualify as correctional officers or protected persons for the enhanced felony penalty.

He contends that insufficient evidence existed that the warden and officer were

correctional officers, and thus, he should have only been convicted of a misdemeanor.

To understand the frivolity of Cottrell's claims, the Court first provides a summary of the

evidence and underlying procedural history. The Court of Appeals of Virginia aptly

summarized the trial proceedings and the evidence of Cottrell's overwhelming guilt as

follows:

> On July 1, 2012, Correctional Officer Jones was working, in
> uniform, at Sussex I State Prison. She was working in the control booth
> of Housing Unit 2 where she could both control the cell doors and

6

monitor two of the housing unit's pods, "Charlie" and "Delta." Each pod consists of two floors. The control booth is elevated so that it is between the two floors. The control booth has barred windows that can be opened. Officer Jones was alone in the booth. Correctional Officer Marvin Harvell was working as the floor officer for "Charlie" pod. Appellant was an inmate housed in "Charlie" pod. Both Officers Jones and Harvell knew appellant.

Around noon that day, the officers were preparing to send the inmates to be locked into their cells. At Officer Harvell's direction, Officer Jones opened the cell doors from her position in the control booth. Officer Harvell directed the inmates to go to their cells. When Officer Jones heard an inmate call her name, she felt and smelled feces hit her in the control booth. She pushed her chair back from the desk at which she was seated. As a result, she was not hit by a second cup of feces thrown at her.

Officer Jones looked in the direction from which the feces had come and saw appellant, near the control booth, walking away from her. Officer Jones told Officer Harvell what happened and went to clean up. Officer Harvell saw Officer Jones covered in feces. He then looked toward the pod stairs and saw appellant coming down the stairs. Officer Harvell saw no other inmates on the second floor of the pod. After officers restrained appellant, Officer Harvell saw two cups, both with feces on them, on the second floor of the pod.

Thereafter, on August 1, 2012, appellant was housed in the segregation area of Sussex I prison. Eddie Pearson, the Warden of Sussex I State Prison, was making rounds of prison housing units. During the round, Warden Pearson spoke with inmates to learn of any concerns he needed to address. Warden Pearson spoke with appellant at his cell. Appellant told Warden Pearson that he was upset about his treatment during recreation time, and he became more upset while speaking with Warden Pearson. Appellant "cursed at [Warden Pearson] and told [him] to get the 'F' away from his cell."

As Warden Pearson walked away from the cell, he heard "a big commotion" coming from appellant's cell. Warden Pearson looked back and saw appellant's arms sticking through the tray slot of the cell door holding a cup in his hand. Appellant then threw the contents of the cup at Warden Pearson. The feces hit Warden Pearson in the face and on one side. Before Warden Pearson could recover from the first assault, appellant threw a second cup of feces at him. Warden Pearson immediately knew that he had been struck with feces by its smell.

As a result of these two incidents, appellant was charged with two counts of assault and battery of a correctional officer. Appellant's

trials on these charges were scheduled for April 24, 2013. On April 22, 2013, the Commonwealth filed a motion to consolidate appellant's trials. The motion stated that appellant was charged with two counts of violating Code § 18.2–57, that justice did not require separate trials, and that "the two offenses are acts that are connected or constitute parts of a common scheme or plan." Appellant objected to the motion, and on April 23, 2013, the trial court heard argument by telephone on the motion. A court reporter was not present to transcribe the argument. The trial court thereafter granted the Commonwealth's motion for joinder of the charges for trial.

Prior to appellant's trial, the trial court stated on the record that the Commonwealth proffered that appellant was charged with two separate charges for felony assault and battery of a correctional officer, that the offenses took place on July 25, and August 1, 2012, at Sussex I State Prison, and that the two acts, throwing cups of fecal matter on the victims on separate dates, were committed using the same modus operandi. The trial court granted the motion because it found "the offenses meet the definition of a common scheme or plan set forth in both [Virginia Supreme Court Rules] 3A:6 and 3A:10." The trial court stated appellant had objected to the trial court's ruling, and had argued, "the two incidences were not part of a common scheme or plan."

At trial, Officer Jones told the jury she recognized appellant's voice as the voice she heard call out her name just before she was hit with feces. On cross-examination, Officer Jones was asked who had administered her oath of office when she first became a correctional officer. She answered that Lieutenant Harrison, her watch commander at that time, administered her oath of office. She also told the jury she had been a correctional officer at the prison since August 2010.

Warden Pearson told the jury that appellant used a cup of the type the prison used to give inmates water, coffee, and juice to throw feces at Officer Jones. He stated appellant kept the cups in violation of prison rules. On cross-examination, appellant's counsel questioned Warden Pearson concerning the protocol used to administer the oath of office for new correctional officers. Warden Pearson testified that new correctional officers are sworn either at the Academy or at the prison. If the oath was administered at the prison, it would be administered by the warden, the assistant warden, or whoever was responsible for "pinning" the new officer.[2] Appellant's counsel then asked, "[I]n order to work for you [correctional officers] have to be sworn, don't they?" Warden Pearson replied, "Correct."

---

[2] "Pinning" is when a correctional officer is officially given the job as a correctional officer.

After the Commonwealth presented its evidence, appellant moved to strike the Commonwealth's evidence as to the felony assault of Officer Jones. Specifically, appellant contended that pursuant to Code § 53.1–1 a correctional officer must be "duly sworn." He argued that because Officer Jones was administered the oath of office by her lieutenant, she was not "duly sworn" pursuant to Code § 49–4[³] and, therefore, she was not a correctional officer. In addition, he argued that to be working in the pod, Officer Jones had to be a correctional officer and because she was not "duly sworn," she was not permitted to be in the pod.

The trial court denied appellant's motion to strike the Commonwealth's evidence. It found that Officer Jones had been working as a correctional officer inside the prison for three years and that "[t]here is a presumption of irregularity [sic]." The trial court also found that Officer Jones was an employee of the Department of Corrections and directly involved in the care, treatment or supervision of inmates in the custody of the Department, as charged in the indictment.

At the conclusion of all of the evidence, appellant renewed his motion to strike the charge of assault on Officer Jones. He argued that pursuant to Code §§ 49–1 and 49–4, Officer Jones was not properly sworn and therefore could not be a correctional officer as defined in Code § 53.1–1. Appellant also addressed the trial court's earlier finding that Officer Jones was an employee of the Department of Corrections and directly involved in the care, treatment or supervision of inmates as charged in the indictment. He argued that because the evidence did not show Officer Jones was a duly sworn correctional officer, she was not allowed into the interior of state correctional facilities, pursuant to Code § 53.1–30. As a result, he argued, Officer Jones could not be, and was not, directly involved in the care, treatment or supervision of inmates in the custody of the Department as charged in the indictment.

The trial court denied appellant's motion to strike the Commonwealth's evidence. It found Officer Jones testified she was sworn as an officer three years earlier and that she had been working inside the correctional facility since she was sworn. In addition, the trial court noted appellant himself elicited evidence from the warden that only duly sworn correctional officers could enter the pods. The trial court

---

³ Code § 49–4 provides, in pertinent part,

> Any oath or affidavit required by law, which is not of such nature that it must be made in court, may be administered by a magistrate, a notary, a commissioner in chancery, a commissioner appointed by the Governor, a judge or clerk or deputy clerk of a court, a commissioner or clerk or deputy clerk of the State Corporation Commission, or clerks of governing bodies of local governments.

found, given the presumption of regularity accorded public officials in the performance of their duties, as well as the circumstantial evidence, established that Officer Jones had been duly sworn and that the Commonwealth had met its burden to establish that Officer Jones was a duly sworn correctional officer at the time appellant threw the feces on her.

The jury found appellant guilty of both indictments. After the jury retired to determine appellant's sentence, appellant asked the trial court "to set aside the verdict as being contrary to the evidence for the same reasons that I stated in my motion." The trial court denied appellant's motion.

(ECF No. 19–4, at 2–6 (first, second, fifth, sixth, eighth, and ninth alterations in original).)

Cottrell's claims are rambling and repetitive and the Court finds it difficult to pinpoint the precise issue that Cottrell intends to raise in each claim. For example, in Claim One, Cottrell argues: "lack of subject matter jurisdiction; conspiring to obtain illegal convictions. Knowingly and willingly." (§ 2254 Pet. 6.) Cottrell further explains:

Before the trial was even commenced, "direct evidence" reveals that the judge and both parties conspired by way of conference telephone call "off the record" where motion for joinder was made by Commonwealth and consolidating the two incidents and where all three (3) had agreed the allegations against me amounted to misdemeanor but, by virtues of [victims] being labeled as "correctional officers" they became Class 6 felonies under subsection (c) of Va. Code § 18.2–57.

(*Id.*) Similarly, in Claim Two Cottrell contends: "Conspiracy to deny jury instruction omitting failure to prove 'beyond a reasonable doubt' the sworn oaths of [victims]." (*Id.* at 8.) Cottrell argues that "when the three discussed jury instructions at the conclusion[]

of Commonwealth's case it becomes apparent how they had previously discussed the

elements issues by that telephone conference call 'off the record'." (*Id.*)[4]

At the core of most of his claims, Cottrell challenges his convictions based on his

belief that the victims were not correctional officers, and therefore he should have been

convicted of two misdemeanors instead of two felonies.[5] The state courts found the

underlying premise, that Officer Krystal Jones and Warden Eddie Pearson were not

correctional officers or persons directly involved in the supervision of inmates, entirely

lacking in merit. In rejecting the claim pertaining to Officer Jones, the Court of Appeals

of Virginia explained:

> Appellant also contends on appeal that the trial court erred in not
> striking the felony portion of his charge of assaulting Officer Jones, arguing
> that Officer Jones was not a duly sworn correctional officer.

---

[4] Cottrell seemingly argues that some overarching conspiracy existed between his counsel, the
Circuit Court, and the Commonwealth because they had discussions that Cottrell was not a part
of, and because Cottrell believes they sought to obtain his conviction in the absence of proof that
either victim was a correctional officer. As discussed in the analysis of his many claims,
Cottrell's allegations are entirely devoid of merit.

[5] Section 18.2–57 of the Virginia Code provides in relevant part:

> A. Any person who commits a simple assault and battery is guilty of a
> Class 1 misdemeanor . . . .
>
>     . . . .
>
> C. In addition, if any person commits an assault or an assault and battery
> against another knowing or having reason to know that such other person
> is . . . a correctional officer as defined in § 53.1–1 [or] a person directly
> involved in the care, treatment, or supervision of inmates in the custody of
> the Department of Corrections . . . such person is guilty of a Class 6
> felony . . . ."

Va. Code Ann. § 18.2–57 (2016). Both assaults and batteries were charged as assault and battery
of a correctional officer. However, Warden Pearson fell under the portion of the statute
protecting a "person directly involved in the . . . supervision of inmates." Va. Code Ann. § 18.2–
57(C). Nevertheless, the Court refers to both charges as assault and battery of a correctional
officer for ease of reference.

On appeal of a motion to strike the Commonwealth's evidence, "we review the evidence in the light most favorable to the Commonwealth, granting all reasonable inference fairly deducible therefrom.'" *Archer v. Commonwealth*, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting *Martin v. Commonwealth*, 4 Va. App. 438, 443 358 S.E.2d 415, 418 (1987)). "'When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it.'" *Smallwood v. Commonwealth*, 278 Va. 625, 629 688 S.E.2d 154, 156 (2009) (quoting *Bolden v. Commonwealth*, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)).

At trial, Officer Jones testified that her lieutenant at the correctional center administered the oath of office to her. Code § 53.1–1 provides that "*Correctional officer*' means a duly sworn employees of the Department of Corrections whose normal duties relate to maintaining immediate control, supervision and custody of prisoners confined in any state correctional facility." Code § 49–4 states, in pertinent part, that

> [a]ny oath or affidavit required by law, which is not of such nature that it must be made in court, may be administered by a magistrate, a notary, a commissioner in chancery, a commissioner appointed by the Governor, a judge or clerk or deputy clerk of a court, a commissioner or clerk or deputy clerk of the State Corporation Commission, or clerks of governing bodies of local governments.

The Commonwealth concedes on appeal that a lieutenant is not a person empowered to administer an oath under Code § 49–4. However, the Commonwealth urges the Court to consider circumstantial evidence that Officer Jones was properly sworn as a correctional officer within the meaning of the statute. The Commonwealth asserts that the trial court found that Officer Jones, whether duly sworn or not, was directly involved in the care, treatment, and supervision of inmates as noted in Code § 53.1–1 which defines a correctional officer. The record shows Officer Jones attended the correctional officer training academy, had worked with the Department of Corrections for three years, and regularly worked in a pod. The warden also testified that only sworn officers, who have been administered the oath of office at the correctional officer academy or at the facility, could work for the Department of Corrections. Appellant presented no evidence to rebut the presumption that Officer Jones was a correctional officer within the meaning of the statute. Accordingly, from the record on appeal, we conclude that Officer Jones was a correctional officer within the meaning of the statute. We also conclude that the trial court did not err in refusing to strike the felony component of the assault and battery charge relating to Officer Jones.

(ECF No. 19–4, at 8–9 (alteration in original).)

To the extent that Cottrell also challenges whether Warden Pearson was a

correctional officer, the Court of Appeals of Virginia also rejected this argument and

explained:

> Appellant contends the trial court erred in refusing to strike the
> felony component of the assault and battery of his warden, Eddie
> Pearson, because Pearson was not a person employed by the Department of
> Corrections directly involved in the care, treatment, or supervision of
> inmates.
>
>     . . . .
>
> Appellant argues that, because Pearson was a warden, he was not an
> officer "*directly* involved in the care, treatment, or supervision of inmates"
> as required by Code § 18.2–57(C). Appellant contends this section of the
> statute was "designed to protect the individuals who have no choice but to
> be in direct contact with the inmates . . . ," and because Pearson merely
> supervised the individuals who directly supervised the inmates, the statute
> did not apply to someone in his position.
>
> As the trial judge correctly noted, however, Pearson was, in fact,
> directly supervising appellant at the time the assault and battery occurred.
> Pearson was engaged in a discussion with appellant regarding the
> conditions attached to his supervision during recreation.
>
> Accordingly, the evidence was competent, credible, and sufficient to
> prove appellant's guilt beyond a reasonable doubt.

(ECF No. 19–3, at 2 (second omission in original).)

To the extent that Cottrell challenges whether the Circuit Court erred in refusing to

strike the felony component of the assault and battery charges because Jones and Pearson

were not sworn officers or direct supervisors of inmates under Virginia law, he fails to

state a claim cognizable on federal habeas. Both the Circuit Court and the Court of

Appeals of Virginia found that Officer Jones was a correctional officer under Virginia

law and that Warden Pearson was in direct supervision of Cottrell at the time of the

assault, and therefore each qualified under section 18.2–57(C) of the Virginia Code.

Claims resting upon an interpretation of state law provide no basis for federal habeas relief. *Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998). This is because "[i]t is beyond the mandate of federal habeas courts . . . to correct the interpretation by state courts of a state's own laws." *Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (citing *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008)); *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing cases for the proposition that "federal habeas corpus relief does not lie for errors of state law").

To the extent that Cottrell truly challenges the sufficiency of the evidence, overwhelming evidence existed of his guilt of two counts of assault and battery of a correctional officer. Under section 18.2–57(C) of the Virginia Code, "if any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is . . . a correctional officer as defined in § 53.1–1 [or] a person directly involved in the care, treatment, or supervision of inmates in the custody of the Department of Corrections . . . such person is guilty of a Class 6 felony . . . ." Va. Code Ann. § 18.2–57 (2016). With respect to the first assault and battery against Officer Jones, Cottrell does not dispute that the elements of assault and battery were satisfied; instead, he contests whether Officer Jones was a sworn correctional officer.[6]

During trial, Officer Jones testified that she was familiar with Cottrell, she heard an inmate call her name, and was subsequently hit with one cup of feces. A second cup

---

[6] Cottrell later argues in Claim Seven that no evidence existed that he threw the feces because no one saw him do it.

14

of feces was thrown at her, but missed her. Officer Jones observed Cottrell walking away. Another officer found two cups of feces on the second floor of the pod immediately after the officer observed Cottrell coming down the stairs. No other inmates were observed on the second floor. Officer Jones had been serving as a correctional officer directly involved in the care, treatment, and supervision of inmates for three years prior to the incident. After reviewing the evidence "in the light most favorable to the prosecution, [a] rational trier of fact could have found" that Cottrell committed assault and battery against a person who was directly involved in the care, treatment, and supervision of inmates. *Jackson*, 443 U.S. at 319 (citing *Johnson*, 406 U.S. at 362).

With respect to Warden Pearson, the indisputable evidence demonstrates that Warden Pearson observed Cottrell throw two cups of feces out of his cell door tray slot onto him. Cottrell argues that as a warden, Pearson was not directly involved in the care, treatment, or supervision of inmates. However, the evidence demonstrated that Warden Pearson was discussing an aspect of Cottrell's supervision when Cottrell twice threw cups of feces at him. The Circuit Court and the Court of Appeals of Virginia found that this satisfied the element of supervision required for a conviction of an assault and battery under section 18.2–57(C). This Court agrees that a rational trier of fact could have made this determination. *Jackson*, 443 U.S. at 319 (citing *Johnson*, 406 U.S. at 362).

Because overwhelming evidence of Cottrell's guilt existed, Claims One and Two will be dismissed.[7]

---

[7] Cottrell also makes oblique references to the motion for joinder of trials and to the jury instructions in Claims One and Two. The Court addresses his objections to joinder and the jury

## V.    INEFFECTIVE ASSISTANCE OF COUNSEL

### A.    Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### B.    Claim Three

From the record, the Court discerns that Cottrell was a difficult client and took issue with many aspects of counsel's representation.[8] In Claim Three, Cottrell faults

___

instructions in Part V.B and V.D, in conjunction with his allegations of ineffective assistance of counsel.

[8] For example, prior to trial, Cottrell filed a number of *pro se* motions even though he was represented by counsel. At the beginning of trial, Cottrell indicated that he wanted to represent himself because counsel "hasn't done what I asked him to do" pertaining to unrelated allegations that Cottrell was injured during his cell extraction after he assaulted Warden Pearson. (Apr. 14,

counsel for "[d]enying fair and separate trials as justice required." (§ 2254 Pet. 9.) In Cottrell's rambling claim, he complains that counsel "fail[ed] to object to the phone call made by the Commonwealth to the court a day before trial where the Commonwealth moved for joinder," and that the call was not transcribed and made part of the record. (*Id.*) Cottrell claims that "one of the alleged incidents had not been investigated," that "the other was partially investigated," and that one incident had "video implicating me, but that the other didn't." (*Id.*) In light of the overwhelming evidence of Cottrell's guilt, he fails to demonstrate any deficiency of counsel or resulting prejudice.

First, to the extent that Cottrell argues that counsel failed to object to the motion for joinder, this contention is belied by the record. Prior to trial, the Commonwealth indicated that it filed a motion to join the offenses for trial, but that defense counsel had objected. (Apr. 14, 2013 Tr. 20.) In granting the motion to consolidate the offenses and overruling defense counsel's objection, the Circuit Court explained:

> Now, yesterday in order to give the Court a heads-up, counsel initiated a phone conference with the Court. [The Commonwealth and defense counsel] and the Court were present at that phone conference. It was not on the record, but both counsel -- And Commonwealth advanced its reasons why the motions were joined, or should be joined under [Va. Sup. Ct. R.] 3A:6, and 3A:10.
> The defense advanced its reason why the motion to consolidate . . . should not be granted.
> The Court listened carefully to arguments of both counsel. It considered Rule 3A6 and Rule 3A10. That received a proffer from the Commonwealth of what its evidence would establish. That proffer was not disputed by the defense, assuming that it was in the light most favorable to the Commonwealth. The facts weren't conceivable by the defense, but for

---

2013 Tr. 8–10.) The Circuit Court ruled that this evidence and his complaints about counsel were unrelated to the criminal trial. (Apr. 14, 2013 Tr. 10.) The Court allowed counsel to continue to represent Cottrell.

purposes of the motion to consolidate the defense conceded that the Commonwealth's allegations were as they stated . . . .

The allegations were the defendant is alleged to have committed the misdemeanors of assault and battery. They become felonies by virtue of correctional officers and the defendant being -- Well, by virtue of them being correctional officers.

The defendant is alleged to have assaulted and battered two persons, one, Krystal Jones . . . .

. . . .

And, one, Warden Eddie Pearson. . . . . The offenses are alleged to have taken place within seven days of each other, July 25, 2012 and August 1, 2012. They are alleged to have taken place at the same place at the institution of the Department of Corrections.

They are alleged to have taken place with the same modus operandi, if you will. That is the defendant is alleged on both occasions to have thrown two cups of fecal matter on each person. So two cups on Officer Jones and two cups on Warden Pearson a week apart . . . .

. . . .

. . . [T]he Court is of the opinion that the offenses meet the definition of a common scheme or plan set forth in both . . . 3A:6 and 3A:10, and that the motion to consolidate is a proper one and ought to be granted.

The Court however notes the defense objecti[on] to the same, advanced as it's [sic] reasons therefore that the two incidences were not part of a common scheme or plan.

The Court notes the defendant's objections for the record, and will stay on the record that the defense has put the Court on notice of its alleged error, of the error that the defense alleges the Court has made and has given its reasons therefore.

(Apr. 24, 2013 Tr. 20–23.)

Counsel clearly objected to the motion to consolidate the offenses for trial and the Court overruled the objection. Cottrell fails to articulate any further argument that counsel should have advanced that would have altered that result, and therefore fails to demonstrate any deficiency of counsel or resulting prejudice.[9]

---

[9] Moreover, misjoinder of charges "rise[s] to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1996) (explaining that "[i]mproper joinder does not, in itself, violate the Constitution"). To show prejudice resulting from misjoinder, a

To the extent that Cottrell faults counsel for failing to object to the phone conference or failing to have it transcribed, the Court discerns no prejudice to Cottrell from counsel's actions. Overwhelming evidence existed of Cottrell's guilt of the two assaults and batteries. Thus, Cottrell is unable to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, Claim Three will be dismissed

## C.   Claim Four

In Claim Four, Cottrell faults counsel for "failing to object to a known lack of subject matter by the [Circuit] Court." (§ 2254 Pet. 11.) Cottrell once again argues that counsel "knew" that Warden Pearson was not a person "protected under section (c) of Va. Code § 18.2–57" and "that the specific indictment was a misdemeanor on its face." (*Id.*) Cottrell seemingly faults counsel for failing to move to strike the felony component of the assault and battery of Warden Pearson. First, counsel cannot be faulted for failing to file a motion that lacks merit. *United States v. Moore*, 934 F. Supp. 724, 731 (E.D. Va. 1996). The Court of Appeals of Virginia determined that the Circuit Court "correctly noted [that] Pearson was, in fact, directly supervising appellant at the time the assault and battery occurred" and the evidence was sufficient to prove Cottrell's guilt beyond a

---

defendant must demonstrate that there is a reasonable probability that the jury confused evidence and convicted him of an offense for which he would have been acquitted. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993). Cottrell fails to demonstrate that the joinder of the two assault and battery charges deprived him of a right to a fair trial. The overwhelming evidence demonstrated that Cottrell was guilty of twice throwing two cups of feces, a mere seven days apart from one another, at correctional officers. Cottrell fails to demonstrate any prejudice from any purported error of counsel with regard to the joinder of the two offenses.

reasonable doubt. (ECF No. 19–3, at 2.) Second, because overwhelming evidence existed of Cottrell's guilt of assault and battery on Warden Pearson, Cottrell fails to demonstrate any prejudice from counsel's purported error. To the extent that Cottrell argues that there was no subject matter jurisdiction in the Circuit Court pertaining to the offense against Officer Jones, that contention also lacks merit. Accordingly, Claim Four will be dismissed.

### D.    Claim Five

In Claim Five, Cottrell faults counsel for "failing to object to deliberate[ly] omitted jury instruction." (§ 2254 Pet. 18.) Cottrell argues that counsel should have had "a lesser-included offense instruction for [a] misdemeanor" read to the jury. (*Id.*) Cottrell again alludes to a purported conspiracy to obtain his conviction for a felony, and contends that the Commonwealth, the Circuit Court judge, and counsel had a discussion at the bench about the instructions that he could not hear. (*Id.*)

The Court discerns no deficiency of counsel or resulting prejudice. At the conclusion of the Commonwealth's case, counsel attempted to offer a jury instruction about "[a] lesser included offense, if [the jury] find[s] it wasn't a correctional officer." (Apr. 24, 2013 Tr. 122.) Counsel offered an instruction for both Warden Pearson and Officer Jones "which have the lesser included offense of assault and battery, omitting the elements of a correctional officer engaged in his duty" or a person directly supervising inmates. (Apr. 24, 2013 Tr. 128; *see* April 24, 2013 Tr. 131.) Counsel argued extensively in support of the lesser-included offense instructions. The Circuit Court explained that "[t]here is no evidence at all that could lead a reasonable person to

conclude that the Warden is not a Department of Corrections employee" (Apr. 24, 2013

Tr. 129), but decided to hold the instructions until after the conclusion of the evidence.

(Apr. 24, 2013 Tr. 132.) The Circuit Court subsequently instructed the jury as follows:

> The defendant is charged with a crime of assault and battery of a correctional officer in the performance, in the case of Krystal Jones, her duties. The Commonwealth must prove beyond a reasonable doubt each of the following elements of the crime:
> (1), That the defendant committed an assault and battery against Krystal G. Jones;
> (2), That the defendant knew or had reason to know when he committed the assault and battery that Krystal G. Jones was a correctional officer;
> (3), That Krystal G. Jones was engaged in the performance of her duties as a correctional officer.
> . . . .
> If you find that the Commonwealth has proved beyond a reasonable doubt the first element of the crime as charged, but you find that the Commonwealth has failed to prove beyond a reasonable doubt either or both of the remaining elements, then you shall find the defendant guilty of assault and battery, but you shall not fix punishment until your verdicts have been returned and further evidence has been heard by you.

(Apr. 24, 2013 Tr. 146–47.) The Circuit Court offered a similar instruction with respect

to the offense against Warden Pearson. (Apr. 24, 2013 Tr. 147–48.) Thus, contrary to

Cottrell's allegation, it appears that the Circuit Court offered a lesser-included offense

instruction for both counts of assault and battery.

The Court fails to discern any deficiency of counsel or resulting prejudice. To the

extent that Cottrell desired a different jury instruction, he fails to proffer what that jury

instruction should have been. Moreover, overwhelming evidence existed that Cottrell

was guilty of both counts of assault and battery of individuals who clearly met the class

of persons identified in section 18.2–57(C) of the Virginia Code. Claim Five wholly
lacks merit and will be dismissed.

### E.    Claim Six

In Claim Six, Cottrell contends that counsel rendered "ineffective assistance in
failing to object to prosecutor's duty to prove all elements of offense." (§ 2254 Pet. 19.)
Cottrell again argues that insufficient evidence existed that Warden Pearson and Officer
Jones qualified as persons protected under Va. Code Ann. § 18.2–57(C). No extensive
discussion is required here. As previously detailed, counsel moved to strike on the
grounds that Officer Jones failed to qualify as an officer because she had not received a
proper oath. (Apr. 24, 2013 Tr. 116–17.) The Circuit Court denied that motion. (Apr.
24, 2013 Tr. 117–19.) Cottrell fails to explain with any specificity what more he believed
counsel should have argued that would have altered the result of the motion to strike with
respect to Officer Jones.

While counsel did not move to strike on the ground that Warden Pearson failed to
qualify under Va. Code Ann. § 18.2–57(C), that premise clearly lacked merit. The
overwhelming evidence established that Warden Pearson was directly supervising
Cottrell when Cottrell threw the feces. Cottrell fails to demonstrate any deficiency of
counsel.

Additionally, in light of the overwhelming evidence of Cottrell's guilt, he fails to
demonstrate any prejudice from counsel's purported errors. Any reasonable juror would
have found Cottrell guilty of assault and battery of a correctional officer or a person

22

directly involved in the supervision of inmates.  Accordingly, Claim Six will be dismissed.

### F.    Claim Seven

In Claim Seven, Cottrell argues that counsel rendered "ineffective assistance in failing to object to insufficient evidence to convict." (§ 2254 Pet. 20.)  Cottrell claims that counsel was deficient in failing to object to the sufficiency of the evidence because no one actually saw him throw the cups of feces at Officer Jones, and because the video played to the jury failed to implicate him definitively.  To the contrary, counsel indeed moved to strike on the ground that the evidence was insufficient to convict Cottrell because no one saw him throw the cups of feces at Officer Jones.  (Apr. 24, 2013 Tr. 119–20.)  Cottrell fails to identify any additional persuasive argument that counsel could have made in that motion to strike, and therefore fails to demonstrate any deficiency of counsel or resulting prejudice.

In addition, contrary to Cottrell's belief, abundant circumstantial evidence existed to find him guilty.  Officer Jones heard an inmate call her name and was hit with a cup of feces.  She observed Cottrell walking away.  Officer Harvell subsequently observed Cottrell coming down the stairs from the second floor and then he found two cups of feces by the stairs.  No other inmate was observed on the second floor.  Because overwhelming evidence of his guilt existed, Cottrell fails to demonstrate any prejudice from counsel's purported errors.  Claim Seven will be dismissed.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In Claim Eight, Cottrell contends that counsel rendered ineffective assistance on appeal because he was "denied of fair and meaningful appellate rights." (§ 2254 Pet. 21.) Cottrell essentially argues that counsel should have advanced his allegations of lack of jurisdiction, denial of separate trials, denial of jury instructions, the prosecutor's failure to prove the elements of the offense, and the insufficiency of the evidence. (*Id.* at 22.)

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." *Id.* (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). Cottrell fails to demonstrate the clear strength of the arguments he claims counsel should have raised on appeal, when compared with the

24

stronger grounds pursued by counsel.[10]  Moreover, in light of the overwhelming evidence

of his guilt, Cottrell fails to demonstrate any resulting prejudice.  Accordingly, Claim

Eight will be dismissed.

### VII.   OUTSTANDING MOTIONS

Cottrell has filed a "Motion for Judgment" (ECF No. 22), a "Motion for Summary

Judgment" (ECF No. 24), and an "Application for Immediate Release from Custody"

(ECF No. 26) all seeking an expedited ruling and his release from custody.  Cottrell has

also filed a "Motion for Appointment of Counsel to Obtain Entitlement to an Evidentiary

Hearing" (ECF No. 25).  Because the Court finds that his § 2254 Petition lacks merit and

he is entitled to no relief, the Motions (ECF Nos. 22, 24, 25, 26) will be denied.

### VIII.   CONCLUSION

Respondent's Motion to Dismiss (ECF No. 17) will be granted.  The § 2254

Petition will be denied.  Cottrell's outstanding Motions (ECF Nos. 22, 24, 25, 26) will be

denied.  The action will be dismissed.  A certificate of appealability will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/

HENRY E. HUDSON
Date: Sept 25, 2016                      UNITED STATES DISTRICT JUDGE
Richmond, Virginia

---

[10] Counsel raised three assignments of error:  (1) the Circuit Court erred in consolidating the
cases for trial; (2) the Circuit Court erred in not striking the evidence as to the felony component
of the assault and battery of Officer Jones; and, (3) the Circuit Court erred in not striking the
felony component of the assault and battery of Warden Pearson. (ECF No. 19–2, at 2 (as
paginated by CM/ECF).)